**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BETTY GALLOWAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. ______________** |
| | ) | |
| | ) | **JURY DEMANDED** |
| **AMERICAN HEALTH PARTNERS MANAGEMENT, LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

COMES NOW the Plaintiff, Betty Galloway (hereinafter "Ms. Galloway" or "Plaintiff"), by and through counsel, and brings this action against Defendant, American Health Partners Management, LLC (hereinafter "AHP," the "Company," or "Defendant"), for declaratory, equitable, and monetary relief arising from Defendant's disability discrimination, age discrimination, failure to accommodate, interference with and retaliation for protected medical leave, unpaid overtime, and unlawful and retaliatory termination, and would show this Honorable Court and a jury of her peers the following:

**<u>PARTIES, JURISDICTION, AND VENUE</u>**

1. Plaintiff, Betty Galloway, is a citizen and resident of Perry County, Tennessee. Ms. Galloway was born in 1959 and was sixty-five (65) years old at the time of her wrongful termination.

2. Defendant, American Health Partners Management, LLC ("AHP" or the "Company"), is a Tennessee limited liability company with its principal office at 201 Jordan Road, Suite 200,

Franklin, Tennessee 37067. AHP operates and is affiliated with numerous related health-care entities and facilities, including a facility located at 1971 Tennessee Avenue North, Parsons, Tennessee 38363, which is located within this judicial district and division. Defendant may be served through its registered agent, Philip Clark, at 201 Jordan Road, Suite 200, Franklin, Tennessee 37067.

3. At all times relevant hereto, Defendant employed more than five hundred (500) employees and was an "employer" within the meaning of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111(5); the Age Discrimination in Employment Act, 29 U.S.C. § 630(b); the Family and Medical Leave Act, 29 U.S.C. § 2611(4); the Fair Labor Standards Act, 29 U.S.C. § 203(d); and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-102.

4. At all times relevant hereto, Plaintiff was an "employee" and a "qualified individual with a disability" within the meaning of the foregoing statutes, was an "eligible employee" under the Family and Medical Leave Act, 29 U.S.C. § 2611(2), and was a non-exempt employee covered by the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207.

5. This Court has original subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, because this action arises under the laws of the United States, including the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.;* the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.; the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.; and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

6. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same common nucleus of operative facts and form part of the same case or controversy as Plaintiff's federal claims.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendant conducts business in this district, a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district, the employment records relevant to the challenged decisions are maintained within this district, and Plaintiff would have continued to perform her work for Defendant's operations in this district but for the unlawful conduct alleged herein.

## CONDITIONS PRECEDENT AND ADMINISTRATIVE EXHAUSTION

8. Plaintiff has satisfied all conditions precedent to bringing this action. On or about the dates required by law, Plaintiff timely filed a verified Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation on the bases of age, disability, and protected activity.

9. All conditions precedent of jurisdiction under 42 U.S.C. § 2000e-5(f)(3) have occurred or have been complied with. The EEOC issued a Notice of Right to Sue on Plaintiff's Charge on March 11, 2026, which Plaintiff received, and this action is filed within ninety (90) days of Plaintiff's receipt of that Notice. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit A and incorporated herein by reference.

10. Plaintiff's claims under the Family and Medical Leave Act and the Fair Labor Standards Act require no exhaustion of administrative remedies and are timely filed within the applicable limitations periods, including the three-year limitations period applicable to Defendant's willful violations of the Fair Labor Standards Act, 29 U.S.C. § 255(a).

11. Plaintiff's state-law claims under the Tennessee Human Rights Act and the Tennessee Disability Act are timely and may be brought directly in this Court.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment, Disabilities, and Approved Accommodation

12. Plaintiff was hired by Defendant on or about April 16, 2016 as a Payroll Specialist. She remained continuously employed by Defendant for nearly nine (9) years, until her unlawful termination effective January 30, 2025.

13. As a Payroll Specialist, Plaintiff provided administrative support to Defendant's Human Resources function and processed payroll for numerous affiliated companies and facilities, including American Health Communities, American Health Plans, Rehab America, TruHealth, and Unity Psychiatric Care. Plaintiff reported to Senior Payroll Manager Lynette Myracle.

14. Plaintiff was a dedicated, loyal, and high-performing employee. She was among the most experienced and knowledgeable members of the payroll department, and her three most recent performance evaluations rated her as exceeding expectations. At all relevant times, Plaintiff was qualified for her position and for the position of Payroll Administrator and performed her job duties satisfactorily.

15. Plaintiff suffers from serious disabilities, including attention-deficit/hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), major depression, and anxiety. These conditions substantially limit one or more major life activities, including concentrating, thinking, sleeping, regulating emotions, interacting with others, and the operation of major bodily functions, including neurological and brain function. Plaintiff's ongoing treatment

has included psychiatric medication, therapy, and eye-movement desensitization and reprocessing (EMDR) therapy.

16. Defendant, including Plaintiff's supervisors and its Human Resources department, was aware of Plaintiff's disabilities. Plaintiff is a qualified individual with a disability who could perform the essential functions of her job, and of the Payroll Administrator position, with or without reasonable accommodation.

17. Beginning in or about 2020 and 2021, Plaintiff requested, and Defendant approved, a reasonable accommodation permitting Plaintiff to perform her work remotely from home because of her disabilities. From in or about April 2021 forward, Plaintiff successfully performed the full duties of her position remotely. Defendant repeatedly granted Plaintiff's remote-work accommodation and at no time contended that Plaintiff's remote work impaired her performance.

**B. Reports of a Hostile Work Environment and Defendant's Inaction**

18. Beginning in or about March 2020, Plaintiff and several coworkers reported to management that they were being subjected to a hostile and toxic work environment, including intimidation tactics by management. Plaintiff's coworker and fellow Payroll Specialist, Gina Beasley, made similar reports. Plaintiff and others reported these conditions directly to Senior Payroll Manager Lynette Myracle, who consistently dismissed and disregarded the reports.

19. In or about September 2020, another Payroll Specialist, Melissa Knight, experienced similar treatment from Ms. Myracle and Payroll Administrator Terri Smith, and was subjected to repeated meetings over minor payroll-input errors. After Ms. Knight reported these issues to Chief Executive Officer Mike Bailey, Mr. Bailey directed his assistant,

Rhondi Cissell, to gather information from certain employees, including Plaintiff. During that inquiry, Plaintiff again reported the hostile work environment and management's intimidation tactics.

20. Defendant failed to remedy the reported conditions. As a result of Defendant's continued inaction, several long-tenured and skilled payroll employees left the department, including Melissa Knight (who took leave and did not return), Gina Beasley (who took leave and did not return), and Cheryl Calhoun (who resigned). The toxic work environment contributed to and exacerbated Plaintiff's disabilities and was among the reasons Plaintiff required her disability accommodation.

**C. Defendant Required Plaintiff to Work Overtime Off the Clock Without Pay**

21. At all relevant times, Plaintiff was a non-exempt, hourly-paid employee. Defendant's own job description for the Payroll Specialist position designates the position's FLSA status as "Hourly" and expressly contemplates that the position "may require flexible hours, unscheduled overtime or occasional week-end work."

22. Plaintiff regularly worked in excess of forty (40) hours per workweek, particularly during payroll-processing periods and when Plaintiff was assigned additional facilities to cover for absent coworkers. Plaintiff's workload steadily increased over the years as Defendant and its affiliates grew and expanded into additional states; for example, while Plaintiff handled the TruHealth payroll from approximately 2017 through late 2023, she routinely worked at least eight (8) hours of unpaid overtime per pay period.

23. Defendant suffered and permitted Plaintiff to perform this overtime work but did not pay her for all of it. Defendant maintained a practice and expectation that discouraged the accurate reporting of overtime. Plaintiff was reprimanded on more than one occasion for

submitting what Defendant characterized as excessive overtime, even when the overtime resulted from additional facilities being added to her workload. As a result, Plaintiff was conditioned to underreport her hours and routinely worked "off the clock"—regularly performing work in excess of approximately four (4) hours per week for which she was not compensated—in order to complete her required work.

24. Defendant knew, or in the exercise of reasonable diligence should have known, that Plaintiff was performing compensable overtime work for which she was not being paid. Defendant nonetheless failed to pay Plaintiff one and one-half times her regular rate for all hours worked in excess of forty (40) per workweek, in violation of the Fair Labor Standards Act. Defendant's violations were willful.

**D. Defendant Denied Plaintiff a Promotion Because of Her Disability and Accommodation**

25. On or about April 29, 2024, Plaintiff applied for a promotion to the position of Payroll Administrator, a position for which she met all stated qualifications set forth in Defendant's official job description. With nearly nine (9) years of service and the most experience of the payroll specialists, Plaintiff was well qualified for the promotion.

26. Plaintiff was denied the promotion. In a Microsoft Teams meeting, Vice President of Human Resources Jonathan Cooper and Senior Payroll Manager Lynette Myracle told Plaintiff that she was not selected because she worked remotely under her ADA accommodation, and that the Payroll Administrator role required being physically present in the office.

27. Defendant's stated reason was false and pretextual. Payroll operations had been performed successfully on a remote basis for years, including throughout and after the COVID-19 pandemic, and other Payroll employees were permitted to work remotely. The Payroll

Administrator position did not require in-office presence as an essential function, and upon information and belief, Defendant subsequently permitted the duties of that position to be performed remotely. Defendant denied Plaintiff the promotion because of her disability and her need for the reasonable accommodation of remote work.

28. The selection process further confirms Defendant's discriminatory motive. Defendant ultimately awarded the position to an external candidate who was unfamiliar with Defendant's payroll systems and processes and who left the position shortly thereafter, having experienced the same hostile work environment that Plaintiff and others had reported. Later, during Plaintiff's medical leave and upon information and belief, Defendant placed a substantially younger and less-qualified employee, Desrae Hardin, into a Payroll Administrator role—on a remote basis—further demonstrating that Defendant's "in-office" justification for denying Plaintiff the promotion was a pretext.

**E. Plaintiff's FMLA Leave and Defendant's Failure to Restore and Termination**

29. On or about November 15, 2024, Plaintiff commenced an approved leave of absence under the Family and Medical Leave Act for treatment of her serious health condition. Plaintiff's health-care provider, Anna Cook, DNP, PMHNP, certified Plaintiff's serious health condition, including a period of incapacity and continuing treatment for a chronic condition.

30. By letter dated January 8, 2025, Plaintiff's provider cleared Plaintiff to return to work and to resume the full duties of her position, without restriction, effective January 30, 2025.

31. On or about January 15, 2025—while Plaintiff was still on approved FMLA leave—Senior Payroll Manager Lynette Myracle and Vice President of Human Resources Jonathan Cooper informed Plaintiff that she was being terminated because she purportedly had "no

job to come back to." Defendant initially set Plaintiff's termination effective January 17, 2025, and then extended the effective date to January 30, 2025, to coincide with the last day of Plaintiff's FMLA leave.

32. Defendant did not restore Plaintiff to her position or to an equivalent position upon the conclusion of her FMLA leave, as required by law. Instead, Defendant terminated Plaintiff's employment effective the very date she was medically cleared to return to full duty.

33. During Plaintiff's FMLA leave, Defendant retained Desrae Hardin—an employee in her twenties with the least seniority in the department—and placed her into a Payroll Administrator position. Ms. Hardin was substantially younger and less qualified and experienced than Plaintiff.

**F. Defendant's Shifting and Pretextual "Reduction in Force" Justification**

34. Defendant has asserted that Plaintiff was terminated as part of a reduction in force ("RIF") associated with the sale of certain of Defendant's divisions. Defendant's RIF justification is false and pretextual.

35. The payroll functions that Plaintiff performed for affiliated companies that were not sold—including, among others, TruHealth and Rehab America—continued to exist and to require performance after Plaintiff's termination. Defendant retained multiple payroll positions.

36. Defendant's own written disclosure of the decisional unit for the purported reduction in force does not appear to list "Payroll Specialist" among the positions eliminated. Defendant's failure even to identify Plaintiff's position in its RIF disclosure contradicts its assertion that Plaintiff's position was eliminated as part of a legitimate reduction in force.

37. Defendant's decisional-unit disclosure further reflects that Defendant disproportionately selected older employees for termination. The list of employees selected for termination is heavily concentrated among employees in their fifties and sixties, including employees aged 67, 65, 64, 63, 62, and 61, while comparatively younger employees were retained.

38. Defendant has offered shifting, inconsistent, and contradictory explanations for its treatment of Plaintiff—asserting that the promotion was denied because Plaintiff worked remotely, while later permitting the role to be performed remotely; and asserting that Plaintiff's termination resulted from a reduction in force, while retaining younger and less-senior employees to perform payroll work and elevating a much younger employee into a Payroll Administrator position. These shifting explanations are evidence of pretext and of Defendant's true discriminatory and retaliatory motives.

**F. Injury to Plaintiff**

39. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages, including lost wages, lost overtime compensation, lost benefits, and lost earning capacity, both past and future. Plaintiff has also suffered severe emotional distress, humiliation, anxiety, loss of enjoyment of life, and the aggravation of her existing disabilities, and she has incurred substantial out-of-pocket expenses for psychiatric and psychological treatment, exceeding six thousand dollars ($6,000.00) in copays and treatment costs alone since 2022.

40. Defendant's conduct was intentional, willful, malicious, and undertaken with reckless indifference to Plaintiff's federally and state-protected rights, entitling Plaintiff to liquidated and punitive damages as provided by law.

## CAUSES OF ACTION

### COUNT I

### Disability Discrimination in Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq*.

41. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

42. Plaintiff is an individual with a disability, has a record of such disability, and/or was regarded by Defendant as having a disability, within the meaning of 42 U.S.C. § 12102, and is a qualified individual who could perform the essential functions of her position and of the Payroll Administrator position, with or without reasonable accommodation.

43. Defendant discriminated against Plaintiff on the basis of her disability, in violation of 42 U.S.C. § 12112(a), by, among other things, denying her a promotion to Payroll Administrator because of her disability and her need for accommodation, subjecting her to disparate terms and conditions of employment, and terminating her employment because of her disability.

44. Defendant's stated reasons for its actions are pretextual. Disability was a determining and/or motivating factor in Defendant's adverse employment actions against Plaintiff.

45. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered the damages described herein. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to compensatory and punitive damages, together with attorneys' fees and costs, pursuant to 42 U.S.C. §§ 12117 and 1981a.

**COUNT II**

**Failure to Accommodate in Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq*.**

46. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

47. Plaintiff is a qualified individual with a disability who requested reasonable accommodations, including the continuation of remote work, which would have permitted her to perform the essential functions of her position and of the Payroll Administrator position.

48. Defendant failed to provide reasonable accommodation and failed to engage in good faith in the interactive process required by the ADA. Among other things, Defendant treated Plaintiff's approved accommodation of remote work as a basis to deny her a promotion, and Defendant failed to reassign or consider Plaintiff for a vacant Payroll Administrator position for which she was qualified, including the position that became vacant in December 2024, as a reasonable accommodation.

49. Defendant's failure to accommodate Plaintiff violated 42 U.S.C. § 12112(b)(5). As a direct and proximate result, Plaintiff has suffered the damages described herein, entitling her to compensatory and punitive damages, together with attorneys' fees and costs, pursuant to 42 U.S.C. §§ 12117 and 1981a.

**COUNT III**

**Retaliation in Violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12203**

50. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

51. Plaintiff engaged in activity protected by the ADA, including requesting and using a reasonable accommodation of remote work, taking disability-related medical leave, and opposing Defendant's disability-based discrimination.

52. Defendant subjected Plaintiff to materially adverse actions because of her protected activity, including denying her a promotion, terminating her employment, and conditioning severance benefits upon the execution of a release containing provisions designed to chill the exercise of her protected rights.

53. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions, in violation of 42 U.S.C. § 12203(a). As a direct and proximate result, Plaintiff has suffered the damages described herein, entitling her to compensatory and punitive damages, together with attorneys' fees and costs.

**COUNT IV**

**Age Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.***

54. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

55. Plaintiff was sixty-five (65) years old at the time of her termination and is a member of the class protected by the ADEA, 29 U.S.C. § 631(a).

56. Plaintiff was qualified for her position, suffered adverse employment actions including termination, and was replaced by, and/or treated less favorably than, substantially younger employees, including Desrae Hardin, who was in her twenties. Defendant disproportionately selected older employees, including Plaintiff, for termination, while retaining substantially younger employees.

57. But for Plaintiff's age, Defendant would not have terminated her or taken the other adverse actions alleged herein. Defendant's stated reasons, including its asserted reduction in force, are pretextual.

58. Defendant's violations of the ADEA were willful, entitling Plaintiff to liquidated damages in addition to her lost wages and benefits, together with attorneys' fees and costs, pursuant to 29 U.S.C. § 626(b).

**COUNT V**

**Interference in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.**

59. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

60. Plaintiff was an eligible employee, Defendant was a covered employer, and Plaintiff was entitled to and took leave under the FMLA for her own serious health condition.

61. Defendant interfered with, restrained, and denied the exercise of Plaintiff's rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1), by, among other things, deciding to terminate Plaintiff while she was on FMLA leave and failing to restore Plaintiff to her position or to an equivalent position upon the conclusion of her leave, when she had been medically cleared to return to full duty.

62. As a direct and proximate result of Defendant's interference, Plaintiff has suffered lost wages, salary, employment benefits, and other compensation. Defendant's violations were not in good faith, entitling Plaintiff to liquidated damages, equitable relief including reinstatement, and attorneys' fees and costs, pursuant to 29 U.S.C. § 2617.

**COUNT VI**

**Retaliation in Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.**

63. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

64. Plaintiff engaged in activity protected by the FMLA by requesting and taking FMLA leave for her serious health condition.

65. Defendant retaliated against Plaintiff because she exercised her FMLA rights, in violation of 29 U.S.C. § 2615(a)(2), by terminating her employment. The temporal proximity between Plaintiff's leave and her termination—Defendant having informed Plaintiff of her termination while she was on leave and having set the effective date to coincide with the end of her leave—and Defendant's pretextual justifications establish the requisite causal connection.

66. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered the damages described herein. Defendant's violations were not in good faith, entitling Plaintiff to liquidated damages, equitable relief including reinstatement, and attorneys' fees and costs, pursuant to 29 U.S.C. § 2617.

## COUNT VII

**Failure to Pay Overtime in Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.***

67. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

68. At all relevant times, Plaintiff was a non-exempt employee engaged in commerce or in the production of goods for commerce, and/or was employed by an enterprise engaged in commerce within the meaning of the FLSA, and was entitled to overtime compensation under 29 U.S.C. § 207.

69. Plaintiff regularly worked more than forty (40) hours per workweek. Defendant suffered and permitted Plaintiff to perform this work but failed to compensate her at one and one-half times her regular rate for all hours worked in excess of forty (40) per workweek, including by requiring or permitting Plaintiff to work "off the clock" and by discouraging the accurate reporting of overtime.

70. Defendant knew, or showed reckless disregard for whether, its conduct violated the FLSA. Defendant's violations were willful within the meaning of 29 U.S.C. § 255(a), extending the limitations period to three (3) years.

71. As a direct and proximate result of Defendant's violations, Plaintiff is entitled to recover her unpaid overtime compensation, an additional equal amount as liquidated damages, and her reasonable attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**COUNT VIII**

**Age Discrimination and Retaliation in Violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq*.**

72. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

73. The Tennessee Human Rights Act prohibits discrimination in employment on the basis of age and prohibits retaliation against employees who oppose discriminatory practices. Tenn. Code Ann. §§ 4-21-401, 4-21-301.

74. Defendant discriminated against Plaintiff because of her age and retaliated against her for engaging in protected activity, including her reports of unlawful and discriminatory conduct, by denying her a promotion, terminating her employment, and subjecting her to disparate treatment, all as described herein.

75. As a direct and proximate result of Defendant's violations of the Tennessee Human Rights Act, Plaintiff has suffered the damages described herein, entitling her to compensatory damages, including damages for humiliation and embarrassment, back pay, equitable relief, and attorneys' fees and costs, pursuant to Tenn. Code Ann. § 4-21-306.

**COUNT IX**

**Disability Discrimination in Violation of the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103 *et seq*.**

76. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

77. The Tennessee Disability Act prohibits discrimination in employment against qualified individuals on the basis of disability. Plaintiff is an individual with a disability who was qualified for and able to perform the duties of her position.

78. Defendant discriminated against Plaintiff because of her disability, in violation of Tenn. Code Ann. § 8-50-103, by denying her a promotion and terminating her employment because of her disability.

79. As a direct and proximate result of Defendant's violations of the Tennessee Disability Act, Plaintiff has suffered the damages described herein, entitling her to compensatory damages, back pay, equitable relief, and attorneys' fees and costs as provided by law, including Tenn. Code Ann. §§ 8-50-103 and 4-21-306.

**COUNT X**

**Common-Law Retaliatory and Wrongful Discharge in Violation of Tennessee Public Policy**

80. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

81. Plaintiff's termination was in violation of the clear and well-defined public policies of the State of Tennessee prohibiting discrimination and retaliation in employment. Plaintiff engaged in protected activity, including opposing and reporting unlawful conduct and exercising her rights to reasonable accommodation and protected medical leave.

82. A substantial and motivating factor in Defendant's decision to terminate Plaintiff was Plaintiff's protected activity and Defendant's discriminatory and retaliatory animus, in violation of the public policy of the State of Tennessee.

83. As a direct and proximate result of Defendant's retaliatory and wrongful discharge, Plaintiff has suffered the damages described herein, entitling her to compensatory and punitive damages, together with all other relief available under Tennessee law.

**COUNT XI**

**Intentional Infliction of Emotional Distress (Outrageous Conduct)**

84. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

85. Defendant's conduct, considered in its totality—including subjecting Plaintiff to a hostile work environment over a period of years, conditioning Plaintiff to perform substantial work without pay, denying Plaintiff a promotion because of her disability, terminating Plaintiff while she was on medical leave for the very disabilities that Defendant's conduct exacerbated and on the day she was cleared to return to work, and thereafter repeatedly pressuring Plaintiff to release her claims—was intentional or reckless, was so outrageous that it is not to be tolerated in a civilized society, and exceeded all bounds of decency.

86. Defendant's conduct in fact caused Plaintiff serious mental injury, including severe and disabling emotional distress requiring ongoing psychiatric and psychological treatment.

87. As a direct and proximate result of Defendant's outrageous conduct, Plaintiff has suffered the damages described herein, entitling her to compensatory and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this Honorable Court enter judgment in her favor and against Defendant, and award the following relief:

(a) Declare that Defendant's conduct violated Plaintiff's rights under the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the Tennessee Human Rights Act, the Tennessee Disability Act, and the common law and public policy of the State of Tennessee;

(b) Award Plaintiff all lost wages, salary, overtime compensation, employment benefits, and other compensation due, in the form of back pay with prejudgment interest;

(c) Award Plaintiff front pay and lost future earnings and benefits, or, in the alternative, order Plaintiff's reinstatement to her position or an equivalent position with full seniority and benefits;

(d) Award Plaintiff her unpaid overtime compensation under the Fair Labor Standards Act, together with an equal additional amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

(e) Award Plaintiff liquidated damages under the Age Discrimination in Employment Act and the Family and Medical Leave Act for Defendant's willful and bad-faith violations;

(f) Award Plaintiff compensatory damages for emotional distress, humiliation, embarrassment, loss of enjoyment of life, and other non-pecuniary losses, and for her out-of-pocket losses;

(g) Award Plaintiff punitive damages in an amount sufficient to punish Defendant and deter similar conduct, as permitted by law;

(h) Award Plaintiff her reasonable attorneys' fees, expert fees, litigation expenses, and costs, pursuant to 42 U.S.C. § 12205, 29 U.S.C. §§ 216(b) and 626(b), Tenn. Code Ann. § 4-21-306, and all other applicable law;

(i) Award Plaintiff pre-judgment and post-judgment interest at the maximum lawful rate; and

(j) Award Plaintiff such other and further legal and equitable relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this the 8th day of June, 2026.

*s/ William A. Wooten*

William A. Wooten (BPR #026674)
*Counsel for Plaintiff*
WOOTEN LAW OFFICE
120 Court Square East
Covington, Tennessee 38019
(901) 475-1050
(901) 234-0028/facsimile
William@wootenlawoffice.com

We acknowledge ourselves as sureties for the costs of this cause not to exceed One Thousand Dollars ($1,000.00).

*s/ William A. Wooten*
WOOTEN LAW OFFICE